# Mayers, Appellant, *v.* The Atlantic Refining Company, Incorporated.

*Negligence—Master and servant—Safe place to work—Defective scaffold—Unskilled workman — Fall — Contributory negligence — Case for jury.*

1. In the absence of evidence to the contrary the presumption is that a scaffold on which an employee is directed by his foreman to work, has been erected by his employer or by some one acting for him for whose negligence the employer is responsible.

2. In an action by an employee against his employer to recover damages for personal injuries sustained in consequence of a fall from a scaffold owing to defects therein, the questions of defendant's negligence and plaintiff's contributory negligence were for

the jury, and the court erred in entering a compulsory nonsuit where there was no evidence as to who erected the scaffold and it appeared that plaintiff ascertained that the scaffold was defective and complained to his foreman of such fact, but was ordered to go back to work upon it, that he thereupon returned to the scaffold and the accident complained of resulted.

Argued March 21, 1916. Appeal, No. 8, Jan. T., 1916, by plaintiff, from order of C. P. No. 3, Philadelphia Co., Dec. T., 1912, No. 3485, refusing to take off compulsory nonsuit, in case of James Mayers v. The Atlantic Refining Company, Inc. Before BROWN, C. J., MESTREZAT, POTTER, MOSCHZISKER and FRAZER, JJ. Reversed.

Trespass to recover damages for personal injuries. Before DAVIS, J.

The opinion of the Supreme Court states the facts.

The trial judge entered a compulsory nonsuit, which the court in banc subsequently refused to take off. Plaintiff appealed.

*Error assigned* was in refusing to take off the nonsuit.

*Owen J. Roberts,* with him *Philip J. Dougherty* and *Robert S. Shaw,* for appellant.

*Thomas F. Gain,* with him *Simpson, Brown & Williams,* for appellee.

OPINION BY MR. CHIEF JUSTICE BROWN, July 1, 1916:

James Mayers was an unskilled laborer employed by the Atlantic Refining Company. On April 11, 1912, he was directed by Frank Bedford, the foreman under whom he was working, to assist in cleaning the inside of a still belonging to and used by the defendant company at Point Breeze, Philadelphia. This still was a barrel shaped metallic tank, about forty. feet long and fifteen feet in diameter at its widest point. In order to facilitate the cleaning of its ceiling and sides, a scaffold had

been erected within it, consisting of two pieces of wood put together in the form of a "V," across which was nailed a ledger board. The pieces of wood put together were three by four-inch lumber, and the top of each rested against the side of the still. The ledger board, a piece of white pine, six inches wide and one inch thick, was nailed to these two pieces of wood at a distance of about ten feet from the floor of the still. The span of the ledger board, from one of the pieces of wood to the other, was about nine feet. The distance from the board to the roof of the still was about four feet. Five planks, each about sixteen feet long, two inches thick and ten inches wide, rested on the ledger board, which served as a support at one end, and the other end of the planks rested on one of the iron girders within the still, thus forming a platform for the scaffold, on which the plaintiff was directed to work. He testified that, on the morning of the day the accident occurred which resulted in injuries to him, when he entered the still, in obedience to orders given him by his foreman, he found the scaffold and platform in place, but felt that the former was not sufficiently strong, and so reported to his foreman, who replied: "That scaffold is strong enough, you get back and get to work along with the rest of the men." He thereupon reentered the still and worked upon the scaffold until the noon hour, when it was moved to another part of the still, but nothing was done to change or alter it. In the afternoon, while he was upon it, in cleaning the upper part of the still, the ledger board broke and he fell to the floor, sustaining the injuries for which he seeks to recover in this action. At the close of the testimony in support of his claim, a judgment of nonsuit was directed by the learned trial judge, and the assignment of error is the refusal of the court below to take it off.

It appeared from the testimony of plaintiff's witnesses that the defendant company had furnished a quantity of lumber to its employees of sufficient thickness and strength for the erection of a safe scaffold, and the

learned trial judge was of opinion that it was not liable
for the negligence of its employees in selecting a ledger
board of insufficient thickness and strength.  He there-
upon directed the entry of the nonsuit under what was
decided by this court in Ross v. Walker, 139 Pa. 42;
Finan v. Sutch, 220 Pa. 379, and McGrath v. Thompson,
231 Pa. 631.  That these cases were without application
is obvious from a single sentence taken from the remarks
of the trial judge in directing the entry of the nonsuit.
It is, "By whom the scaffold was erected, does not ap-
pear;" and it did appear from the plaintiff's own testi-
mony that he had had no part in its erection.  In the
three cases relied upon as authorities requiring the entry
of a nonsuit it clearly appeared that the negligence
which caused the injury to each plaintiff was either his
own or that of fellow workmen.  That the jury could
fairly have found from the testimony that the scaffold
upon which the plaintiff was working was not a safe one
is manifest from another sentence in the opinion of the
trial judge sustaining the motion for a nonsuit: "It was
affirmatively proved that the ledger board broke.  It
further appears from the testimony of men who have had
experience in the erection of scaffolds that a one by six-
inch board, which was the character of the ledger board
used in this case, was not a safe and usual ledger board
to use in a scaffold."

The duty was upon the defendant company to furnish
the plaintiff a safe scaffold within the still where he was
directed to work, and where a scaffold was necessary to
enable him to do the work which had been assigned to
him by the foreman.  Its duty towards him, when he
was working there, was to provide and maintain a safe
place for him while at his work: Cougle v. McKee, 151
Pa. 602; Carr v. General Fire Extinguisher Company,
224 Pa. 346; Killmeyer v. Forged Steel Wheel Company,
243 Pa. 110.  When, in obedience to the orders of the
foreman, from whom his orders came from time to time,
the plaintiff entered the still, he found the scaffold

erected. As just observed, he had had no part in its erection, but, unskilled laborer as he was, he doubted its sufficiency, and went upon it only when peremptorily directed to do so by his superior. In the absence of any testimony to the contrary, the presumption is that it had been erected by his employer, or by some one acting for it, for whose negligence it was responsible. From the time the plaintiff entered the still in the morning until the ledger board broke in the afternoon he had done nothing to alter the scaffold, nor did any one else do so.

The question of the defendant's negligence on the situation, as described by plaintiff's witnesses, was clearly for the jury. Whether the negligence of the appellant's fellow workmen can be set up as a defense by the appellee, in view of the Act of June 10, 1907, P. L. 523, is not a question now before us. Without regard to that act, on the testimony presented by the plaintiff, his case was for the jury, and this is all we now decide.

Judgment reversed and procedendo awarded.